**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **E. L. PHELPS**, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>**JOHN CRUMPTON STOMBER, et al.,**<br><br>Defendants. | Case No. 11-cv-01142 |
| **E. L. PHELPS**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CARLYLE CAPITAL CORP.,**<br><br>Defendant. | Case No. 11-cv-01143 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFFS**
**AND APPROVAL OF SELECTION OF COUNSEL**

Plaintiff E.L. Phelps ("Phelps"), and co-movants Michael J. McLister, Dzing Jean Wu, Susan M. Liss and William F. Schaefer (collectively, the "Movants" or the "CWM Client Group") respectfully submit this memorandum of points and authorities in support of their motion, pursuant to the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order (a) appointing the Movants collectively, or alternatively Movant McLister individually, as Lead Plaintiff(s) in the two related class actions cited above; and (b) approving the Movants' selection of Cuneo, Gilbert & LaDuca, LLP ("CGL") and Greenfield & Goodman, LLC ("G&G") as counsel. The motion is

further supported by the Declaration of Matthew E. Miller ("Miller Decl.") and exhibits thereto filed contemporaneously herewith.  For the reasons stated below and in the Miller Declaration, the Court should enter an order appointing the CWM Client Group, or, alternatively, Movant McLister, as Lead Plaintiff(s), and approving their selection of counsel.

## I. Pertinent Facts and Procedural History

### A. The Collapse of Carlyle Capital Corp.

Carlyle Capital Corp. ("CCC" or "the Company") is a limited company incorporated in Guernsey, Channel Islands in August 2006, with its principal place of business at all pertinent times in Washington, D.C.  CCC was an investment fund heavily promoted by the Carlyle Group, a Washington area investment bank consisting of various affiliated entities, including Defendants Carlyle Investment Management, LLC ("CIM"), T.C. Group, LLC ("TCG"), and TC Group, Holdings, LLC ("TCG Holdings") (collectively known as "the Carlyle Entities").

The Complaints in the two related actions allege that, throughout a Class Period extending from a June 19, 2007 to March 17, 2008, certain Defendants (CCC and former officers and directors of CCC), made material misrepresentations and failed to disclose material adverse facts about the Company's true operating and financial condition, the efficacy of CCC's business model, and the adequacy of its liquidity position. Specifically, the Complaints allege that Defendants proceeded with a deceptive and wholly inappropriate initial public offering ("IPO") of CCC Class B shares and Defendants caused the Company to issue and disseminate a false and misleading offering memorandum and supplemental offering memorandum that presented a materially inaccurate and intentionally deceptive depiction of CCC's business prospects and financial condition, including its capital allocation, fair value reserves, use of leverage, and high risk nature of the CCC portfolio.  Notwithstanding the grave circumstances facing CCC at the time of the IPO and thereafter, Defendants continued to conceal CCC's dire situation from shareholders and the investing public and, specifically misrepresented that CCC followed its investment guidelines when, in fact, the CCC continued to use leverage in excess of the limits imposed by those very guidelines, a fact deliberately not disclosed to the public.  Additionally,

Defendants refused to improve CCC's precarious liquidity problems and over-accumulation of residential mortgage backed securities ("RMBS")-based assets, which would have reduced the Company's losses.  All of this conduct was in violation of §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated by the Securities & Exchange Commission.

On March 17, 2008, the Royal Court of Guernsey entered a "winding down" order directing that CCC be liquidated, and appointed Alan Roberts and Neil Mather as joint liquidators.  Christopher Morris and Adrian John Denis Rabet were appointed as additional joint liquidators on March 18, 2008.  Defendants repeatedly obstructed the liquidators' efforts to obtain custody of the complete books and records of CCC.  On or about July 7, 2010, the liquidators commenced various civil actions against the former directors of CCC and others in various courts in Delaware, the District of Columbia, New York and Guernsey alleging that defendants breached their fiduciary duties to CCC by causing it to acquire an excessive portfolio of RMBS and to borrow excessively from repo lenders without reserving adequate liquid assets to enable it to meet margin calls.

### B. The CWM Client Group

Movant McLister has the largest loss of any single member of the Movants.  In his capacity as trustee of a family trust, Mr. McLister purchased 80,541 shares of CCC Class B common stock during the Class Period, incurring losses of $1,184,688.16.  McLister Certification, attached as Exhibit A to the present motion.

Plaintiff Phelps purchased 30,789 shares of CCC Class B common stock during the Class Period, and incurred losses of $337,001.  *See* Phelps Certifications, attached to the respective complaints.   Movant Wu, in her capacity as trustee of a family trust, purchased 51,316 shares of CCC Class B common stock during the Class Period, incurring losses of $758,759.  Wu Certification, attached as Exhibit B to the present motion.  Movant Liss purchased, as trustee of a family trust, 15,790 shares of CCC Class B common stock during the Class Period, incurring losses of $300,010.  Liss Certification, Exhibit C to the motion.  Movant Schaefer purchased 7895 shares of CCC Class B common stock curing the Class Period, incurring a loss of

$150,005. Schaefer Cert., Exhibit D to the present motion.

Collectively, the Movants incurred out-of-pocket losses of $2,730,563.16 resulting from their purchases of CCC shares, all of which occurred during the Class Period. *See* Miller Decl., Exh. 4 (list of all transactions of the Movants).

At the time of their respective investments in CCC, all five plaintiffs were clients of the Capitol Wealth Management Group, at the time a division of Citi Smith Barney, which, in turn, was the global private wealth management unit of Citigroup, Inc. Citigroup Global Markets Limited, another subsidiary of Citigroup , was one of the bookrunners of CCC's initial public offering. All five movants made their initial purchases of CCC shares on July 7, 2007.

### C. Pertinent Procedural History

Plaintiff Phelps commenced these two related class actions on June 21, 2011 with the filing of his two Complaints. The Complaints allege causes of action pursuant to § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as § 20 of the Exchange Act.

On June 22, 2011, the undersigned counsel issued the press release styled "Greenfield & Goodman, LLC and Cuneo Gilbert & LaDuca, LLP Announce Class Action Lawsuits on Behalf of Purchasers of the Shares of Carlyle Capital Corporation," announcing the commencement of two related class actions in the United States District Court for the District of Columbia, and the fact that persons within the defined Class have until sixty (60) days from the date of the press release to move to become "lead plaintiff" in one or both of these actions. Miller Decl., ¶ 3 and Exh. 1. As described in the Miller Declaration, at ¶ 7, the undersigned are not aware, as of 7:30 p.m. on the date of this filing, of any other complaint, or lead plaintiff motions, filed by other members of the Class.

## II. Argument

### A. The Court Should Appoint the Movants as Lead Plaintiffs

The Exchange Act, as amended by the PSLRA, establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Securities Act and the Exchange

4

Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B); *Reese v. Bahash*, 248 F.R.D. 58, 61-62 (D.D.C. 2008).

Under the PSLRA, the Court appoints as lead plaintiff the Class member that "the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. §§ 78u-4(a)(3) (B)(i). There is a presumption under the statute that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class;
>
> and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

This presumption may be rebutted only upon proof by a Class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As Judge Huvelle explained, the lead plaintiff "selection process begins once the first plaintiff files an action and publicizes the pendency of the action, the claims made, and the purported class period." *In re XM Satellite Radio Holdings Secs. Litig.*, 237 F.R.D. 13, 17 (D.D.C. 2006) (citing 15 U.S.C. §§ 78u-4(a)(3)(A)(i)). The statute requires the court to consider within 90 days all motions, filed within 60 days after publication of that notice, made by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

Here, the Movants herein meet the foregoing criteria, and are entitled to the presumption that they are the most adequate plaintiffs to represent the Class. As a result, Movants should be appointed lead plaintiffs in the two related actions.

### 1. The Movants Are Willing To Serve As Class Representatives

On June 21, 2011, Mr. Phelps first filed two related class action complaints on behalf of himself and other members of the Class.  At that time, Plaintiff also filed certifications attesting to his willingness to serve as representative of the Class and to provide testimony at trial if necessary.  On June 22, 2011, Plaintiff caused a notice (the "Notice") to be published, pursuant to 15 U.S.C. § 78u-4 (a)(3)(A)(i), which announced that two related securities class actions had been filed on behalf of shareholders of CCC and advised putative Class members that they had until 60 days from the publication of the notice to file a motion to seek appointment as a lead plaintiff in one or both of the instant actions. See, Miller Decl., Exh. 1.

Co-Movants McLister, Wu, Liss and Schaefer have complied with the requirements of the PSLRA by joining Plaintiff Phelps in moving for appointment as lead plaintiffs within sixty day s of the issuance of the foregoing notice by Mr. Phelps, and by filing certifications with this motion attesting to their willingness to serve as Class representatives.

Accordingly, the Movants have satisfied the first requirement to serve as lead plaintiffs. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa).

### 2. The Movants Appear to Have the Largest Financial Interest In The Relief Sought In These Actions

There is a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  "Congress sought to attract lead plaintiffs with a significant financial stake in the litigation on the assumption that they would be more likely to play an active role in directing and overseeing the litigation." *Plumbers Local #200 Pension Fund v. The Washington Post Co.*, Civ. Action No. 247 F.R.D. 33, 35 (D.D.C. 2011) (citations omitted).

The Movants, collectively, lost $2,730,563.16, and Movant McLister individually lost $1,184,688.16 as a result of the alleged misconduct of the defendants. These losses are significant enough to ensure that the Movants have a sufficient financial stake to remain active participants in these two related actions and to their vigorous prosecution by counsel. The

Movants are not aware, as of the time of this filing, of any other moving party who has suffered larger losses.  *Compare, e.g., Plumbers Local #200 Pension Fund*, 247 F.R.D. at 36-37 (found movant who lost in excess of $245,000 to be most capable of adequately representing members).  Accordingly, the Movants, collectively, or alternatively, Movant McLister individually, appear to satisfy the largest financial interest requirement to be appointed as a lead plaintiff in this action. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Movants Satisfy the Requirements of Rule 23(a)

The Exchange Act (as amended by the PSLRA), at 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(cc), further requires that at the outset of the litigation, the lead plaintiff must also "otherwise satisf[y] . . . the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  While Rule 23(a) generally includes four requirements (namely, numerosity, commonality, typicality, and adequacy), at this stage, the presumptive lead plaintiff "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23."  *In re: XM Satellite Radio Holdings Secs. Litig.*, 237 F.R.D. 13, 18 (D.D. C. Aug. 1, 2006).  Phelps easily satisfies the typicality and adequacy requirements under Rule 23(a).

The typicality requirement "'asses[es] whether the action can be efficiently maintained as a class and whether the [movant has] incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.'" *In re: XM Satellite Radio Holdings Secs. Litig.*, 237 F.R.D. at 18 (citation omitted).  Accordingly, "[t]ypicality is generally satisfied when the [movant's] claims arise from the same course of conduct, series of events, or legal theories as the claims of other class members." *Id.*; *see Reese*, 248 F.R.D. at 63 (typicality satisfied "'if each class member's claim arises from the same course of events that led to the claims of the [movant] and each class member makes similar legal arguments to prove the defendant's liability'") (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001)).

The claims asserted by Mr. Phelps, and supported by his co-movants (who have reviewed the Complaints and authorized the filing of substantially similar claims), are typical of those of the Class. The Movants, like other members of the Class, were harmed by the statements and omissions made by the Defendants that created a market and inflated the price for CCC shares in the initial public offering and aftermarket, in purchasing shares of CCC during the Class Period, as set forth in the Complaints.  The Movants also suffered losses similar to those of other Class members and his losses result from Defendants' common course of misconduct to all members of the Class.  Thus, the Movants' claims are typical, if not identical, to those of the other members of the Class.  Accordingly, the Movants satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of a lead plaintiff is determined by considering whether the movant "has the ability and incentive to represent the claims of the class vigorously," has retained "adequate counsel," and whether there exists any "conflict between [the movant's] claims and those asserted on behalf of the class." *In re: XM Satellite Radio Holdings Secs. Litig.*, 237 F.R.D. at 18 (citation omitted); *see also Reese*, 248 F.R.D. at 63 (to satisfy the adequacy requirement, movant "'must not have antagonistic or competing interests with the unnamed members of the class'" and "'must appear able to vigorously prosecute the interests of the class through qualified counsel'") (*quoting Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

The Movants are each individually and collectively as a group adequate representatives of the Class.  There has been no showing that there is any conflict between their interests and those of any other member of the Class. Movants have also retained highly competent and experienced counsel to pursue the Class claims.

Accordingly, at this stage of the proceedings, Movants have made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfy 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

**B. The Movants' Selection of Counsel Should Be Approved**

The Exchange Act, as amended by the PSLRA, vests authority in the lead plaintiffs to select and retain lead counsel, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v).  The PSLRA "evidences a strong presumption in favor of approving a properly-appointed lead plaintiff's decision as to counsel selection and counsel retention." *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. at 21 (citation omitted).  A court should not interfere with the lead plaintiff's selection of counsel unless it is necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the Movants have selected and retained G&G and CGL as his proposed Lead Counsel for the Class. Both firms have substantial experience prosecuting complex litigation, such as the instant actions, and are well qualified to represent the Class. *See* Miller Decl., ¶¶ 4-5 and Exhs. 2 and 3 (describing qualifications of Class counsel).

**III. Conclusion**

For the reasons stated above, Plaintiff E.L. Phelps, and co-movants Michael J. McLister, Dzing Jean Wu, Susan F. Liss and William F. Schaefer, respectfully pray that the Court grant their motion for their appointment, or alternatively the appointment of Movant McLister, as lead plaintiffs, and approve their selection of counsel.

August 22, 2011                                    Respectfully Submitted,

                                        ___/s/ Matthew E. Miller___
Jonathan W. Cuneo (D.C. Bar No. 939389)
Matthew E. Miller (D.C. Bar No. 442857)
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
(202) 789-3960

Richard D. Greenfield
Marguerite R. Goodman
GREENFIELD & GOODMAN, LLC
250 Hudson Street, 8th Floor
New York, N.Y.  10013
(917) 495-4446

*Attorneys for Plaintiff E.L. Phelps and Co-Movants Michael J. McLister, Dzing Jean Wu, Susan M. Liss, and William F. Schaefer*